UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALAM MELES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:16-545 |
| ) | Judge Aleta A. Trauger |
| AVALON HEALTH CARE, LLC d/b/a ) | |
| TREVECCA HEALTH CARE, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM & ORDER

Pending before the court is a Motion to Recover Costs of Previously Dismissed Action filed by the defendant (Docket No. 7), to which the plaintiff has filed a Response in opposition (Docket No. 11), and the defendant has filed a Reply (Docket No. 16). For the reasons discussed herein, the motion will be granted in part.

### BACKGROUND AND PROCEDURAL HISTORY

On July 7, 2014, the plaintiff in this employment action, Alem Meles, initiated a prior lawsuit against the defendant, her former employer Avalon Health Care, LLC d/b/a Trevecca Health Care ("Trevecca"), in the Circuit Court for Davidson County, Tennessee, bringing claims for several violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"), as well as claims for violation of the Family and Medical Leave Act, 20 U.S.C. § 2611, *et seq.* ("FMLA"). (Complaint, *Meles v. Avalon Health Care*, Case No. 3:14-cv-1487, 2015 WL 5568060 (M.D. Tenn. Sept. 22, 2015) ("Meles I"), Docket No. 1-1.) On July 22, 2014, that action was removed to the Middle District of Tennessee. (Notice of Removal, Meles I,

1

Docket No. 1.) The trial in that action was initially set for October 20, 2015. (Meles I, Docket No. 11.)

On September 22, 2015, this court issued a Memorandum and Order, granting summary judgment in favor of Trevecca as to the Title VII and THRA claims, but allowing the FMLA claims (for both interference and retaliation) to proceed, subject to the sanction, under Rule 37, that Ms. Meles would not be permitted at trial to introduce any evidence aside from her own testimony during her case in chief. (Meles I, Docket Nos. 30-31.) A more detailed discussion of the factual allegations, claims, and procedural history to that point can be found in the court's Memorandum (Meles I, Docket No. 31) and will not be repeated herein.

On October 7, 2015, approximately two weeks before trial was initially set to occur, the court issued two Orders, one granting the parties' joint Motion for Mediation and the other scheduling a settlement conference before the Magistrate Judge for the following day. (Meles I, Docket Nos. 41, 42.) The settlement conference was ultimately unsuccessful.

On October 8, 2015, Ms. Meles filed an unopposed Motion to Continue the trial date in order to discuss with her counsel the summary judgment decision, litigation strategy, and the possibility of an out-of-court settlement. (Meles I, Docket No. 43.) This motion was granted the following day (Meles I, Docket No. 45), at which time the court also reset the trial for January 12, 2016 (Order, Meles I, Docket No. 47).

On December 12, 2016, at the request of the parties, the action was referred to the Magistrate Judge for another settlement conference (Order, Meles I, Docket No. 50), which, again, was ultimately unsuccessful (Meles I, Docket No. 54). On January 4, 2016, approximately one week before trial was scheduled for the second time, the parties filed a joint

stipulation of voluntary dismissal without prejudice (Meles I, Docket No. 55), which was signed by the court the following day (Meles I, Docket No. 56).

On March 7, 2016, Ms. Meles filed the currently pending action as an entirely new lawsuit. (Docket No. 1), which was initially assigned to a different judge than the judge who had overseen the prior action.[1] The Complaint in this second action brings only a claim for violations of the FMLA, which are based on the exact same factual allegations as the prior action.[2]

On March 17, 2016, the court issued an Order granting Ms. Meles's request to proceed *in forma pauperis* in this action. (Docket No. 5.)

On April 29, 2016, Trevecca filed the currently pending Motion to Recover Costs of Previously Dismissed Action, along with a Memorandum in support and an attached Affidavit of Costs by Chen Ni, counsel for Trevecca. (Docket Nos. 7, 8.) Trevecca argues that, under Rule 41(d), it is entitled to recover the costs associated with the prior action, Meles I. According to the Ni Affidavit, the costs incurred by Trevecca in Meles I totaled $3,363.41. (Docket No. 8-1.) Those costs are broken down as follows: $400 in filing fees for the Notice of Removal from state court in the prior action, $237.46 in unspecified online research costs, $2,574.75 in costs for deposing Ms. Meles, including court reporter fees and interpreter fees (further broken down to show that $499.75 of those costs were incurred for an initial scheduled deposition of Ms. Meles to which she did not show up, and $2,075 was incurred for a second scheduled deposition, which

---

[1] This second action was initially before Judge Nixon but, upon his retirement, was reassigned to Judge Trauger, who had presided over the prior action.

[2] Ms. Meles filed nearly identical pleadings to her first action (including allegations that appear to relate only to the Title VII claims previously dismissed on summary judgment), though the instant Complaint expressly adds the allegation that Ms. Meles requested leave from Trevecca under the FMLA and then was immediately told by a Trevecca representative that she was being terminated from her employment (a fact that was not expressly included in the complaint in the prior action but was asserted on summary judgment once the record was developed).

3

Ms. Meles did attend), and $151.20 in obtaining the EEOC filings associated with the first action. (*Id.*) Also on April 19, 2016, Trevecca filed a Motion to Stay Litigation pending the recovery of costs from the previous action under Rule 41(d)(2). (Docket No. 9.)

On May 9, 2016, Ms. Meles filed a Response in opposition to the Motion to Recover Costs, arguing that she voluntarily dismissed her prior action in order to discuss with her counsel the appropriate settlement amount she should accept and in light of language barriers that obstructed her ability to communicate freely with her counsel. (Docket No. 11.) Ms. Meles also asserts that the filing of the instant action "was precipated by the elevation of Defense counsel to the Federal Bench and the belief that it was in her best interests to proceed in that manner."[3] (*Id.*, p. 2.) Finally, Ms. Meles argues that, because she is bringing this action *in forma pauperis* (having been terminated from her menial position with Trevecca and unable to secure employment elsewhere), the awarding of fees would pose an undue burden that might deny her the ability to proceed with the litigation. Ms. Meles does not specifically challenge the amount of fees requested by Trevecca. Also on May 9, 2016, Ms. Meles filed a Response in Opposition to Trevacca's Motion to Stay. (Docket No. 12.)

On May 19, 2016, Trevecca filed a Reply to its Motion to Recover Costs.

On January 11, 2017, upon reassignment of this case to Judge Trauger, the court issued an Order denying Trevecca's Motion to Stay. (Docket No. 25.) As of this time, the parties had taken renewed discovery in this action, and a Motion for Summary Judgment by Trevecca had

---

[3] Waverly Crenshaw was listed as named counsel for Trevecca in the previous action. Following both the voluntary dismissal of that action and the refiling of the instant action, he was sworn in as a United States District Judge in this district. Other counsel of record in this matter have continued to represent Trevecca in the current action. It is unclear to the court what impact Judge Crenshaw's appointment to the bench has on this action, or how it relates in any way to Ms. Meles's decision to involuntarily dismiss her first action and then refile.

4

already been filed (and currently remains pending, to be addressed at a later date, once Ms. Meles has had an opportunity to respond).

## ANALYSIS

Federal Rule of Civil Procedure 41(d) provides as follows:

> If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied.

"The plain language of Rule 41(d) makes clear that an award under the rule lies within the sound discretion of the trial court." *Hython v. City of Steubenville*, Case Nos. 95-3629, 95-3669, 1996 WL 456032, at *4 (6th Cir Aug. 12, 1996); *see also Noel v. Guerrero*, 479 F. App'x 666, 669-70 (6th Cir. 2012) (granting a motion for voluntary dismissal without prejudice and noting that this does not unfairly expose a defendant to the possibility of duplicative litigation expenses because costs may be awarded upon refiling under Rule 41(d)). The Sixth Circuit has affirmed a district court's award of costs where a plaintiff voluntarily dismissed her action after it had been removed to federal court, then refiled the same claims in state court and, upon the action being removed to federal court again, the district court awarded costs only for items that would not benefit the defendant in the second action. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868 (6th Cir. 2000). The Sixth Circuit specifically stated that "[n]othing in the language of Rule 41(d) . . . suggests that a defendant must show bad faith before a district court can order payment of costs incurred in a voluntarily dismissed action." *Id*. at 874. Finding, then, that the plaintiff apparently used the voluntary dismissal to try and "wipe the slate clean" and avoid removal to federal court, the Sixth Circuit found that the awarding of costs was appropriate, stating that Rule 41(d) is meant:

> not only to prevent vexatious litigation, but also to prevent forum shopping, especially by plaintiffs who have suffered setbacks in one court and dismiss to try

5

> their luck somewhere else. . . . Hence, Rule 41(d) is also intended to prevent attempts to gain any tactical advantage by dismissing and refiling the suit.

*Id*. (internal citations omitted).

Trevecca argues that the only possible explanation for Ms. Meles's involuntary dismissal of her first lawsuit was to gain a tactical advantage by refiling and attempting to wipe the slate clean of her prior Rule 37 sanctions. Trevecca also argues that Ms. Meles has had two opportunities to bring her claims to trial but both times has backed out after settlement negotiations failed. According to Trevecca, both times it incurred significant expenses in preparing for settlement conferences and trial dates, including drafting motions *in limine*, pretrial stipulations and orders, compiling witness and exhibit lists, and preparing witnesses, all of which will have to be done yet again in this currently pending action. As a result, Trevecca argues that it should be awarded costs under Rule 41(d). Ms. Meles argues that she did not intend to pursue a tactical advantage by voluntarily dismissing her first action and refiling. Ms. Meles distinguishes her case from *Rogers* because she did not refile in a different jurisdiction and, therefore, she asserts, she cannot be accused of forum shopping. Ms. Meles, however, overlooks the fact that she did had other options for proceeding with this litigation even if she was not ready to go to trial in January of 2016, aside from involuntary dismissal and refiling, such as asking for a continuance at that time. Moreover, her only justification for being unready to go to trial in January of 2016 was that she needed yet more time to discuss litigation strategy and settlement options with her attorney.

While the court is sensitive to the fact that Ms. Meles may have had language barriers inhibiting her communications with her attorney, the fact remains that the first action was involuntarily dismissed one week before trial, at which time Ms. Meles had already been through

two settlement conferences, one three months prior, and had worked with her attorney for well over a year through the pre-trial process, all of which cuts against the argument that yet additional time was truly warranted. Moreover, Ms. Meles never even attempted to seek a continuance of the trial. Instead, she refiled the same pleadings under a new case number just two months later and was initially assigned to a different judge, all of which supports an inference that she may have been attempting to avoid Rule 37 sanctions or to avoid trial before Judge Trauger, who had already ruled against her on the majority of her claims at summary judgment in the prior action. In any event, Rule 41 does not require a showing of bad faith and, even absent such motives, the court finds that the voluntary dismissal and refiling of this action is unjustified, has created additional work for Trevecca and the court, and serves no purpose other than securing a possible tactical advantage for Ms. Meles.

Finally, Ms. Meles argues that the court should deny costs in this situation because she is proceeding *in forma pauperis* and clearly cannot afford to pay the costs. Rule 41(d), however, does not provide that financial ability is a factor that needs to be considered in the court's determination of whether to award costs. Indeed, the authority cited by Ms. Meles – *Duffy v. Ford Motor Co.*, 218 F.3d 623, 632 (6th Cir. 2000) – expressly rejects the argument that a plaintiff's financial ability to pay costs should be a factor the court relies on in determining whether costs should be awarded. *See also Chandler v. Case Western Reserve*, 57 F. App'x 683, 686 (6th Cir. 2003). Finally, while *Duffy* reverses the district court's dismissal of an action for failure to pay costs associated with a prior action under Rule 41(d), the Sixth Circuit explicitly states that its holding is limited to the "unique circumstances" of that case, in which the district court abused its discretion by failing to consider whether the incompetence of the plaintiffs' prior

counsel was responsible for the dismissal (without the plaintiffs' knowledge) rather than any action of the plaintiffs themselves.

For these reasons, the court finds that an award of costs is appropriate in this action. Because, however, the deposition of Ms. Meles from the previous action is clearly useful in the instant action (indeed, Trevecca has filed the prior deposition in support of its currently pending motion for summary judgment (*see* Docket No. 19-1)), the court will not award costs for the successful deposition. The court will, however, award Trevecca costs of $499.75 for the attempted deposition in the prior action that Ms. Meles did not attend. Additionally, the court will not grant Trevecca's request for costs associated with legal research, because Trevecca has not specified the nature of that research and the court cannot determine whether it may be useful in the instant action. The court will, however, award Trevecca costs associated with the other items identified by Trevecca that are clearly not relevant to the instant action: $400 in filing fees for removal of the first action to federal court and $151.20 for obtaining the EEOC fling that was relevant only to Ms. Meles's Title VII claims that are no longer before the court in the instant action.

## CONCLUSION

For the foregoing reasons, the Motion to Recover Costs of Previously Dismissed Action is hereby **GRANTED IN PART**. Ms. Meles is **ORDERED** to pay Trevecca costs in the amount of $1050.95.

It is so **ORDERED**.

Enter this 31st day of January 2017.

_____
ALETA A. TRAUGER
United States District Judge